

**UNITED STATES DISTRICT COURT**
**for the**
**Middle District of Florida**
**Civil Division**

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

**JAMES LESTER WILLIAMS, JR.,**

        Plaintiff,

Vs.        Case Number: 8:20 cv 2842 02 Spf
                               **JURY TRIAL DEMANDED**

**POLK COUNTY BOARD OF COUNTY COMISSIONERS,**

        Defendant.

**PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT**
**OF COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

1.    COMES THIS DAY, Plaintiff Mr. JAMES L. WILLIAMS, proceeding *pro se*, ("Plaintiff" or "I" "me" or "my") who complains against POLK COUNTY BOARD OF COUNTY COMISSIONERS, ("Defendant"). Plaintiff brings his discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq*. Plaintiff also brings claims directly against Defendant for its unlawful retaliation against Plaintiff in violation of Title VII during the actionable period, and seeks equitable relief, actual damages, and attorney's fees and costs for those violations.

## JURISDICTION AND VENUE

2.     Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 703(a), 704(a), 706(f)(1), 706(f)(3), of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e-5(f)(1), 2000e-5(f)(3), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

## PARTIES

3.     The Plaintiff in this case is James L. Williams Jr.   My address is 2729 St. Cloud Oaks Dr. Valrico, FL 33594.  My Telephone number is: (813) 239-6115. The Defendant in this case is Polk County Board of County Commissioners (BOCC).  Their address is: 330 W Church St. Bartow, FL 33830.   Their telephone number is (863) 534-6000.

## FACTS

4.     Plaintiff is an African American Male; 44 years of age; born August 25, 1976.

5.     Before being hired as a Veteran Services Officer Supervisor, Plaintiff met the qualification for being a Veteran Service Officer because Plaintiff is a U.S. Navy Veteran. Plaintiff worked for Polk County Veteran Services for two years (Veteran Service Officer Experience), before being selected as the Polk County Veteran Services Supervisor and Plaintiff continued to qualify and hold the Veteran Services annual certification.  Plaintiff also has an Associates, Bachelor's, and Master's Degree.

6.      Plaintiff was discharged as the Veteran Service Supervisor on December 13th, 2019.

7.      The reasons stated why the Plaintiff was terminated from the Veteran Services Supervisor position was for the following: Termination for Cause due to the Plaintiff's performance improvement regarding team interaction and development was not demonstrated during the probationary period.

8.      Team interaction was conveyed as if the Plaintiff was being controlling, authoritative and belittling as the Plaintiff advocated and promoted BOCC policies as it relates to employees coming to work on time, working a full day's work and performing their duties as prescribed within their job descriptions.

9.      The Director of Health and Human Services and The Director of Human Resources, terminated the Plaintiff for cause (still in probationary period), given the perception of the Plaintiff's team was that the Plaintiff was belittling, controlling, and authoritative to them as the Plaintiff advocated and promoted BOCC policies as it relates to coming to work on time, and doing their jobs as prescribed by their job descriptions.

10.     Although it was only a perception from employees (which the Plaintiff rebutted with a meeting with Human Resources), the Plaintiff was terminated after attending a pre-disciplinary board, and an appeals board.

11.     Back in 2014, under the leadership of the same Director of Health and Human Services and Director of Human Resources, a Senior Planner within the Housing and Neighborhood Development by the name of Melody B, Fredrick (African American Female) filed a complaint on the HND Manager - Mr. Greg Alpers (white male) for

harassment and harsh treatment within the work center as it relates to program polices and requirements.

12.    Another lady within the same work center Ms. Juanita (African American Female) also filed a complaint alleging similar concerns. Both the Director of Health and Human Services, in conjunction with the Human Resources Department, stated that the HND manager (Mr. Greg Alpers), while perceived by Mrs. Fredrick as threatening and discriminatory, has only performed in fulfilling his managerial duties, as conveying short and cold messages about the reality of the department's financial limitations, and sometimes struggles, including hard decisions that could have impact some work groups: but always in the best interest of the BOCC and the programs his office oversees.

13.    Plaintiff would also like to mention that the Director of Health and Human Services (the same Director Plaintiff worked for) was introduced to her current husband by her subordinate - HND Manager (Greg Alpers – Caucasian).   So, both Ms. Fredrick (African American) and Ms. Juanita's (African American) complaints were overshadowed by the relationship between their HND manager (Greg Alpers) and the Director of Health and Human Services (Marcia Andresen – Caucasian).

14.    Given the two very similar circumstances, both supervisors/managers (Plaintiff and Mr. Greg Alpers) were promoting and looking out for the best interest of BOCC policies, internal program policies and were perceived by employees as harsh, harassing, controlling, belittling and authoritative.

15.     The difference is the perception of the White Supervisor (Mr. Greg Alpers) was viewed favorably, by both the Director of Health and Human Services, and The Human Resources Department.  More importantly, Mr. Alpers was supported by the Director of Health and Human Services, given they both are Caucasian and their apparent friendship (HND manager introduced his friend (now current husband) to Marcia Andresen, the Director of Health and Human Services).

16.     The HND manager, Mr. Greg Alpers was given the benefit of the doubt for doing his job and the African American Supervisor (Plaintiff) was not given that same benefit and was arbitrarily terminated under the guise of cause.

**Grounds Upon Which The Plaintiff Was Discriminated Against**

17.     The Plaintiff hereby incorporate the foregoing paragraphs as if fully set forth herein.

October 2016

18.     The Plaintiff was hired as a Veteran Service Officer with Polk County Veteran Services; worked there for almost two and a half years with no disciplinary actions and not even as much as a complaint.

19.     The Plaintiff worked hard and quickly became the number one Veteran Service Officer and eventually was selected as the Polk County Supervisor, Veteran Services.

<u>April 2019</u>

20.     The Plaintiff interviewed for the Polk County Supervisor, Veteran Services position and the Plaintiff noticed that a coworker of his, Mr. Joseph Lesniewicz (Caucasian male) also had an interview that day.

21.     The Plaintiff was confused of how Mr. Joseph Lesniewicz was able to get an interview, when Mr. Lesniewicz was not qualified for the position; but was somehow provided the opportunity for an interview.  Although the Plaintiff was selected as the Supervisor; the Plaintiff found that to be concerning.

<u>June 2019</u>

22.     Plaintiff was selected for the Supervisor, Veteran Services position.

23.     Plaintiff noticed that Mr. Joseph Lesniewicz (Caucasian Male) refused to accept any direction from the Plaintiff as the Supervisor and often would go directly to the Director of Health and Human Services for any and all personal matters, as well as matters pertaining to Veteran Services.

24.     Plaintiff spent several weeks having meetings with Mr. Joseph Lesniewicz about following the Chain of Command, and remaining at work for a full day's work.  Plaintiff also encouraged Mr. Lesniewicz to speak with the Plaintiff about matters pertaining to Veteran Services first, before going to the Director of Health and Human Services. This included about him coming to work late, obtaining permission for leaving early, taking days off without prior approval and scheduling outreaches out in the community without approval from the Plaintiff, which so happened to be Ms. Lesniewicz's supervisor.

25.    Mr. Lesniewicz refused and disregarded the Plaintiff's encouragement. Plaintiff was told by the Director of Health and Human Services to let Mr. Joseph Lesniewicz be and that Mr. Lesniewicz can supervise himself.

<u>July 2019</u>

26.    Mr. Timothy Kirkhart (Caucasian Male), who was also a close friend of Mr. Joseph Lesniewicz would also begin to not accept any direction from the Plaintiff as the supervisor and often would come to work late.

27.    Mr. Kirkhart also had begun consulting directly with the Director of Health and Human Services (and Director's staff) for all personal matters, as well as matter pertaining to Veteran Services. The Plaintiff also spent several weeks talking with Mr. Timothy Kirkhart about coming to work on time and following the Chain of Command.

28.    Mr. Kirkhart's response to the Plaintiff was that "the only reason why you are in charge and working here is because we allow you to."

29.    Plaintiff had another discussion with the Director of Health and Human Services about the events that were taking place with both Timothy Kirkhart and Joseph Lesniewicz and Director's replied "let Tim and Joe be… They know how to supervise themselves."

<u>July 2019</u>

30.    While the Plaintiff was supervisor, Polk County Veteran Services had an opening for another Veteran Service Officer position. The Plaintiff was told by the Director of Health and Human Service to make sure I selected Mr. Joseph Lesniewicz as a panelist for my interviewing panel.  The Plaintiff recognized this was not protocol, but assumed the

Director wanted Mr. Lesneiwicz to get some interviewing experience.  So, the Plaintiff agreed.

31.     After reviewing resumes and score sheets for conclusiveness provided by Human Resources, the Plaintiff and the interviewing panel interviewed several Caucasian males, one African American male, and two Caucasian women. After the interviews, we individually counted our scores for each candidate and the African American candidate Mr. Harry Clark scored the highest by far.

32.     However, Mr. Joseph Lesniewicz argued that he was not the best candidate and that the Plaintiff should hire one of the other candidates, which Mr. Joseph Lesniewicz had chosen a Caucasian male.

33.     The Plaintiff explained to Mr. Joseph Lesniewicz, that I understand this is Mr. Lesniewicz's first time being on an interviewing panel, but it does not work like that... The Plaintiff explained that we cannot hire who we feel should be hired; we must select the best candidate based on his or her qualifications, merit, and ability to answer pertinent questions during the interviewing process (as guided by Human Resources).

34.     The Plaintiff immediately told the Director of Health and Human Resources about what had happened at the interviewing panel in regard to Mr. Joseph Lesniewicz.  The Director of Health and Human Services then asked the Plaintiff, "what's the name of the candidate that Mr. Joseph Lesniewicz was interested in."  The Plaintiff told the Director the name of the candidate that Mr. Joseph Lesniewicz was interested, in and the very next day, the Director of Health and Human Services tried to pressure the Plaintiff into changing the interviewing panel's merit chosen candidate selection to Mr. Joseph Lesniewicz's

candidate of choice.  The Plaintiff immediately gave the Director of Health and Human Services the same explanation that the Plaintiff gave Mr. Joseph Lesniewicz and then proceeded with hiring the most qualified candidate as evidenced by the interviewing results (which was the African American Candidate – Mr. Harry Clark).

<u>August 2019</u>

35.    The Plaintiff received a three-month evaluation from Plaintiff's Director of Health and Human Services.  The Director of Health and Human Services conveyed that the Plaintiff was doing a great job and marked all satisfactory marks.  The Director of Health and Human Services conveyed that both Mr. Tim Kirkhart and Mr. Joseph Lesniewicz has complained that they were starting to feel burned-out, and that Plaintiff needed to find balance for outreach initiatives, phone calls, the completion of Veteran Service related paperwork and team building initiatives.

36.    The Plaintiff was caught off guard by that statement, because neither Mr. Tim Kirkhart nor Mr. Joseph Lesniewicz had mentioned they were beginning to feel burned-out to the Plaintiff, especially since Mr. Joseph Lesniewicz was hardly at work and Mr. Tim Kirkhart was habitually late for work and spent most of his evenings trying to catch-up with his schedule.

37.    The Plaintiff asked other Veteran Service Officers who maintained similar, if not greater workloads, excellent work attendance and reliability record if they were burnt-out and they stated, "no". Despite the Plaintiff's finding amongst other Veteran Service Officers to be contrary to Mr. Lesniewicz and Mr. Kirkhart complaint, the Plaintiff ensured the Director of Health and Human Services that he would help with the client load

by seeing clients, hold training and awareness concerning these matters, and that the Plaintiff was in progress of hiring more people as Veteran Services hiring funds became available to do so.

<u>September 2019</u>

38.     Both Joseph Lesniewicz and Timothy Kirkhart (Caucasian employees) continue to abuse the BOCC policies as well as the Director of Health and Human Services unofficial open-door policy.

39.     Both Joseph Lesniewicz and Timothy Kirkhart continued to develop their relationship with the Director of Health and Human Services (Marcia Andresen), in which the Director continued to allow them privileges of coming to work at their convenience and not performing their duties as prescribed in their job descriptions.

40.     The Plaintiff would express to the Director of Health and Human Services that corrective action documentation for coming to work late, poor performance and inappropriate behavior could curtail such behavior amongst Mr. Joseph Lesniewicz and Mr. Timothy Kirkhart (Caucasian employees).   The response again from the Director of Health and Human Services was to just leave them alone, and let them be.   The Plaintiff was also told by the Director of Health and Human Services on several occasions that the Plaintiff was never to write them up for any infractions or violations of BOCC policies and Procedures.

41.     Joe Lesniewicz and Timothy Kirkhart would often say to Plaintiff, "you are here because we allow you to be here."

42.    They began complaining to the Director together about Plaintiff persistence that they follow BOCC polices as it pertains to coming to work on time and doing their jobs. Both Timothy Kirkhart and Joe Lesniewicz were either habitually late to work, and/or often left early without, the Plaintiff's approval.

43.    Every time the Plaintiff would try and write them up for those violations, the Director would mandate that the Plaintiff does not go through with it.

44.    Additionally, the Plaintiff would be pressured by the Director's secretary (conveying the Director's authority), to "revise and/or replace" previously submitted timecards by the Plaintiff and the staff. The Director's secretary would state that the Director (Marcia) has given approval for these changes.

45.    Both Joe and Tim Kirkhart began approaching other workers in an effort to get them to complain to the Director of Health and Human Service about the Plaintiff, so they can develop a history of complaints, to get Plaintiff replaced, so that Mr. Joseph Lesniewicz can become the new Supervisor.

46.    The new employee that the Plaintiff hired (Harry Clark – mentioned above in reference to Interviewing panel issue with Mr. Lesniewicz) which is African American, stated that Mr. Joseph Lesniewicz and Mr. Timothy Kirkhart approached him about getting rid of the Plaintiff so that Mr. Joseph Lesniewicz can be the Supervisor, but now needed a black person to complain also to conceal it from looking discriminatory.

47.    Mr. Harry Clark later confessed to the Plaintiff that after seeing the relationship and influence that Mr. Joseph Lesniewicz and Mr. Timothy Kirkhart had, with the Director of

Health and Human Service and her secretary, he felt compelled to comply with their requests because he feared for his job, and if he refused, could be terminated for cause.

48.   Mr. Clark also told the Plaintiff that he had to tell the Plaintiff, because it was not right that they are using him (an African American male), to take down another African American arbitrarily and capriciously, without cause.

49.   Mr. Clark mentioned that before telling the Plaintiff, he had spoken with Cedric Cox, in Housing and Development Division, to get some advice about what to do in this situation.   Mr. Clark stated that Cedric Cox told him to go tell the Director of Health and Human Service, Marcia Andresen.   Mr. Clark then stated that such an action would have been occupational suicide for him, given that he knows about Joseph Lesniewicz and Mr. Timothy Kirkhart's relationship with the Director and her secretary.

50.   Ms. Julie Ann Seay (African American Female) was another employee approached by Mr. Joseph Lesniewicz and Mr. Timothy Kirkhart and she declined to assist them with their plan to help get the Plaintiff fired and to get Mr. Joseph Lesniewicz in the Supervisory position.

51.   As of approximately June 3, 2020 (approx. six (6) months after Plaintiff's termination), Mr. Joseph Lesniewicz had been selected as the new Supervisor and coincidentally, Julie Ann Seay resigned two weeks later (6/12/2020).

<u>October 2019</u>

52.   The Plaintiff finally approached the Director with a stronger stance and said that, "I can't be effective as a Supervisor if you continue to enable the behavior of both Mr. Joseph Lesniewicz and Mr. Timothy Kirkhart. They are coming to work as they please.

They are leaving work as they please.  They are not performing their duties as prescribed by their job descriptions and they are complaining to you about [Plaintiff] promoting BOCC policies and encouraging them to do their job".

53.    The Plaintiff asked the Director "what was so special about these two guys that they get such special privileges" from her.  The Director just looked at the Plaintiff and walked back to her desk (basically ignoring my question and sent me back to my office with no response).

54.    At the very next Director and Plaintiff bi-weekly meeting, The Plaintiff wrote a letter and attached it to Plaintiff's bi-weekly progress report.  In it, the Plaintiff addressed the issues once again, in writing this time, and stated that moving forward, despite the Director's demands, the Plaintiff will be writing up both Mr. Joseph Lesniewicz and Mr. Timothy Kirkhart for any future infractions as it pertains to BOCC policies, and any failures of them to do their jobs, as prescribed by their job descriptions.

55.    The Plaintiff conveyed to the Director that her guidance to ignore these violations have only escalated such inappropriate behaviors, and have made it impossible for the Plaintiff to do his job of supervising a team to adequately service the Polk County Veteran Community.

56.    Within a week, the Director of Health and Human Services gave the Plaintiff a negative follow-up work performance memorandum dated: October16, 2019, and the Director focused that memorandum on allegations from both Mr. Joseph Lesniewicz, and Mr. Timothy Kirkhart's perceptual complaints.

57.     Within that same month, the Director of Health and Human Services approached the Plaintiff, and mentioned that on Plaintiff's calendar she noticed that I was doing a community outreach for the day. The Plaintiff replied, "yes." The Director then stated that that the outreach was scheduled late and far from work and the hours driven would be suffice for me to go home afterwards. That afternoon, while Plaintiff was at the outreach Mr. Joseph Lesniewicz contacted the Plaintiff to let the Plaintiff know that the Director had given him a personal recommendation and was placing him in the Polk County Emerging Leaders Course, but just noticed the Plaintiff's signature is required before he can submitting the document.

58.     The Plaintiff told Mr. Lesniewicz to hang tight because the Plaintiff will return to the office before close of business that day. Once back at the office, the Plaintiff noticed that the Director was out, but called the Director and conveyed to the Director that Mr. Joseph Lesniewicz was hardly ever at work, and that he is not ready for this course's stringent academic and attendance requirement. Additionally, the Plaintiff conveyed that there is currently no Supervisory position posted at the time that Mr. Joseph Lesniewicz could qualify for, given that the course is seen internally by Polk County BOCC as equivalent to an associated degree.

59.     The Director told the Plaintiff to just sign it, at which the Plaintiff did. Well, it became apparent later that the effort to get Mr. Joseph Lesniewicz in the class was an effort for Mr. Joseph Lesniewicz to qualify for the Plaintiff's job after the Plaintiff was fired.

60.     As part of the entry requirements for the Polk County Emerging Leaders Course, Mr. Joseph Lesniewicz did not exhibit the competency required for acceptance in the

course, and ultimately was not selected.  This meant that Mr. Joseph Lesniewicz still did not meet the requirements to be the Supervisor, Veteran Services – Polk County.

61.     After the Plaintiff was fired, the Polk County Veteran Services Supervisor job description was revised to where Mr. Joseph Lesniewicz could qualify, given the fact that he didn't have a degree and was not selected for The Polk County Emerging Leaders Course (which was viewed as equivalent as an associate's degree/used by the county to afford no degree holders supervisory jobs), as a direct proximate cause of Mr. Joseph Lesniewicz being a White, Caucasian, Male.

62.     The Director of Health and Human Services revised the job description to read "associates degree or equivalent experience" to tailor the job description to Mr. Joseph Lesniewics resume getting Mr. Joseph Lesniewicz qualified for the position.

63.     Mr. Harry Clark (the Veterans Service Officer that the Plaintiff mentioned earlier as the newly hired employee who was enticed by Mr. Joseph Lesniewicz and Timothy Kirkhart to complain to the Director about the Plaintiff's conduct, in hopes of getting the Plaintiff fired, so that Mr. Joseph Lesniewicz can get the Supervisory position) also interviewed for the Polk County Supervisor, Veteran Services position after the Plaintiff was fired.

64.     Mr. Clark holds a Master's Degree and was previously a Veteran Services Officer Supervisor from another county.   Mysteriously, Mr. Joseph Lesniewicz was picked over him for the Supervisor position.  Based upon information and belief, both Mr. Joseph Lesniewicz's friend and coworker, "Timothy Kirkhart and the Director of Health and

Human Service" were both on the interviewing panel and chose Mr. Joseph Lesniewicz as the new Supervisor, of Polk County Veteran Services.

<u>November 2019</u>

65.    The Veteran Service secretary (Ms. Carol Mothershed) entered my office and said there are clients here for Timothy Kirkhart, but at that time, Timothy Kirkhart had not made into work.

66.    The Plaintiff asked Mrs. Mothershed how long it has been since the client been waiting and she stated, "one hour and she have tried to call Timothy Kirkhart with no answer".  So, the Plaintiff also tried calling Timothy Kirkhart to see why he was running late; again he did not answer his telephone.

67.    Within five minutes the Plaintiff saw Timothy Kirkhart casually walking to his office door.  The Plaintiff asked, "how come you are late?" Timothy Kirkhart conveyed, "I stopped for donuts on my way into work."

68.    With the constant tardiness to work, the Plaintiff researched Timothy's calendar and noticed Timothy had begun scheduling himself an hour for Admin time and using that time to come to work an hour late.

69.    The Plaintiff requested the Veterans' Services Secretary to adjust Timothy Kirkhart schedule so that he can see clients for that hour, instead of coming to work an hour late and getting paid for an hour he never works.  Timothy requested a meeting with the Plaintiff and during that meeting the Plaintiff asked, "who approved an hour of Admin time for you for those days on your calendar?"  Timothy responded, "It's been this way for a while now and that the Director, Marcia Andresen approved it herself."

70.     The Plaintiff told Timothy Kirkhart that his actions of coming to work late has been grossly habitual, and that the Plaintiff was going to write him up for this infraction, and that he needed to makeup that hour, if he wanted to get paid for that hour.

71.     The Plaintiff immediately notified the Director of his intent, and told her the Plaintiff will be drafting a comprehensive and historical pamphlet, to support the Plaintiff decision to write-up Timothy Kirkhart.

72.     The Director expressed her significant disagreement as she has historically done and also told the Plaintiff to give Timothy Kirkhart back that hour, which the Plaintiff did.

73.     Within a week and out of nowhere, the Plaintiff's Director calls him in for an impromptu meeting (not one of our regularly schedule meetings) and gave the Plaintiff another Memorandum and this one was titled "One-Month Probation Extension".

74.     First, the Plaintiff didn't know he was on probation, since he had been working for Polk County Veteran Services for over three (3) years. Secondly, again that Memo only manifested the Plaintiff's work-performance issues with Timothy Kirkhart, Joseph Lesniewicz perceptual complaints; and now Harry Clark, the new hire that stated that Timothy Kirkhart and Joe Lesniewicz manipulated him to complain to the boss in hopes of getting the Plaintiff fired.

75.     After seeing the relevant memorandum, the Plaintiff immediately contacted Human Resources (Mr. Alejandro Velazquez – Employee Relations Manager) and the Plaintiff requested a meeting between the Plaintiff, Human Resources, and the Plaintiff's Director so we could clarify the issues at hand, and obtain mediation between the perception of employees (perceived belittling, controlling and authoritativeness) versus the

reality of the situation (fulfilling my managerial duties as it stipulates within the Employee Handbook); to also include the preferential treatment by the Director for certain employees and the retaliation of write-ups that the Plaintiff was receiving from the Director for actually doing his job.

76.     The Plaintiff was told by Human Resources that his Director was not interested in mediation, and that they requested the Plaintiff meet with them only (Mr. Alejandro Velazquez – Employee Relations Manager and Mr. Lashana Joe – newly hired).

77.     After meeting with Human Resources, the Plaintiff was told that his concerns with the employees (coming to work late, leaving work early, failing to do their job as prescribed by the job descriptions and jumping the chain of command) were all legitimate concerns and that the Plaintiff's Director was wrong for intervening and inappropriately collaborating with employees Timothy Kirkhart and Joseph Lesniewicz.

78.     The Plaintiff was told by Mr. Alejandro Velazquez – Employee Relations Manager, that he does not have any authority to tell the Plaintiff's Director what to do, but he will ask his Director, the Director of Human Resources, to talk to the Plaintiff's Director (Director of Health and Human Services) and convey the importance of the Plaintiff's position, as well as the need for the Plaintiff to advocate and promote BOCC policies without the Directors' interference.

<u>December 2019</u>

79.     A few weeks later the Plaintiff got an email at work from Mr. Alejandro Velazquez – Employee Relations Manager, and the Plaintiff was summoned to Human Resources for a follow-up from the Plaintiff's last meeting with Human

Resources.  Once inside the office for this follow-up meeting, in attendance were the Plaintiff, the Plaintiff's Director of Health and Human Services, Mr. Alejandro Velazquez – Employee Relations Manager, and Mrs. Lashana Joe – newly hired employee.

80.     In the meeting, the Plaintiff was immediately told by Mr. Alejandro Velazquez that it was decided by the Director of Health and Human Resources and Human Resources to terminate the Plaintiff for cause (during his probationary period), but the Plaintiff first have an option to resign.  The Plaintiff was given the opportunity to sign a pre-filled resignation letter and was told that the Plaintiff can write "whatever the Plaintiff wanted" in the "reason for resigning space." The Plaintiff denied the request to resign and then the Plaintiff was given the termination letter for review, signature and immediately terminated.

81.     In an effort to get the Plaintiff to willingly resign, the Plaintiff was told that going the resignation route, will alleviate any employment termination on my occupational record, thus allowing me to seek employment easily elsewhere.

82.     The Plaintiff declined and told the Director of Health and Human Services, and the Human Resources representative that this was absurd, and unethical. The Director requested of Mr. Alejandro Velazquez – Employee Relations Manager, to explain to the Plaintiff that he does not have the right to a pre-disciplinary Board nor does he have any right to an Appeals Board, which is why the resignation option was in my best interest.

83.     Again, the Plaintiff declined to resign and was ultimately terminated.

<u>December 2019</u>

84.    The Plaintiff received a letter from Polk County Human Resources that after careful review, they had determined that terminating the Plaintiff without offering him his rights for a Pre-Disciplinary Board and an Appeal Board was a mistake, given that Human Resources had determined that the Plaintiff was actually never on probation.

85.    The Plaintiff had been with Polk County Veteran Services for over three (3) years. At the time of Plaintiff's termination and had exceeded the probationary requirements.

86.    Both the Plaintiff's three year's stellar reputation that got the Plaintiff hired as the Supervisor, Veteran Services and with the Plaintiff's three-month evaluation are both contrary to the termination letter's reasons for termination.  Being terminated for cause is for employees that do not meet the probationary requirements. It is now evident that the Plaintiff was indeed discriminated against, given the collaborating efforts and actions of the Director of Health and Human Services, Mr. Joseph Lesniewicz, Timothy Kirkhart, their manipulation of Harry Clark, Human Resources and the Pre-Disciplinary/Appeals Board.

87.    In the letter from Polk County Human Resources, it stated that given that mistake of terminating the Plaintiff for cause, the Plaintiff was then eligible for a Pre-Disciplinary Board Hearing.

88.    The Plaintiff agreed to a Pre-Disciplinary Board hearing, but then noticed that the Chairperson of the Pre-Disciplinary Board Hearing was the Director of Health and Human Services (Marcia Andresen), the director who ultimately wrongfully terminated the Plaintiff.

89.    The Plaintiff notified Polk County Human Resources Department of the conflict of interest with the Pre-Disciplinary Board Chairperson and requested someone else other than the Plaintiff's Director of Health and Human Services to be the Chairperson of the Pre-Disciplinary Board Hearing.

90.    The Plaintiff conveyed crystal clear, that without choosing another Chairperson, there is no way that the Plaintiff would receive an impartial and unbiased Pre-Disciplinary Board Hearing.   The Plaintiff further conveyed that the Employee Handbook states that, "the City Manager or anyone else he designates can also fulfill this duty". Polk County Human Resources ultimately declined the Plaintiff's request.

<u>January 2020</u>

91.    The Plaintiff attended the Pre-Discipline Board Hearing.   Attendees were the Director of Health and Human Services – Marcia Andresen, Mrs. Lashana Joe – newly hired person and the Plaintiff. Directly adjacent to the office they were having our meeting, the Plaintiff saw Mr. Alejandro Velazquez (Employee Relations Manager) and asked if he would be joining us and Mr. Alejandro Velazquez said, "no."

92.    Again, the Plaintiff pleaded the same story to the same Director of Health and Human Services who wrongfully terminated the Plaintiff in the beginning.

93.    Mrs. Lashana Joe – newly hired Human Resources Representative, appeared to have fallen asleep during this meeting. The Plaintiff had awakened her when asked, "Are you sleep?"  Of course, after the Pre-Disciplinary Hearing, the Director upheld her previous decision.

94.     The Plaintiff asserts that the Pre-disciplinary hearing was not utilized as intended for a fresh look from a nonbiased and impartial individual/party into the facts of the Plaintiff's termination was not achieved because the same Director of Health and Human Services oversaw her own decision to terminate the Plaintiff.

95.     Within a few weeks, the Plaintiff received correspondence upholding the Director's same decision, and additional correspondence, and an opportunity for an appeals board was provided.  The Plaintiff agreed to an appeals board.

96.     While the Plaintiff prepared for his appeal Board, the Plaintiff inquired about protocol with the appeals board manager as it pertains to contacting witnesses.   The Appeals Board manager told the Plaintiff to give him the list of his witnesses and he would notify them of my request for the appeal hearing.

98.     The appeal board manager had several days to notify the Plaintiff's witnesses of the Plaintiff's request for them to participate in the appeal board hearing.  Only one of the Plaintiff's witnesses was notified (Mr. Cedric Cox) and he was notified at 2:00pm the day before the appeals hearing.  The Plaintiff was told by the Appeals Board Manager that all the other witnesses, "had taken the day off or were unavailable" per the Director of Health and Human Services.

<u>March 2020</u>

99.     At the appeals board hearing, the Plaintiff noticed that he was not given a diverse panel at the appeals hearing.  The panel consisted of three (3) (Caucasian) males and one (1) (Caucasian) female that were to decide if the Plaintiff were going to keep his job.

100.    Additionally, at the panel the Director had available, Joseph Lesniewicz, Timothy Kirkhart and Mr. Harry Clark as her witnesses (whom all were conveniently at work that day and available).   Furthermore, Mr. Timothy Kirkhart was a committee member/routine panelist for the Polk County appeals board, and given that he now was a witness in this dispute on behalf of county leadership, Plaintiff asserted that he was  not sure if the county took his authority and relationship with other panelists into consideration.

101.    The Appeals Board upheld the Director's denial of giving the Plaintiff his job back.

102.    The Plaintiff was not surprised, given the Director of Health and Human Services has a history of discriminatory complaints and has managed to retain her position. The Director of Health and Human Services has been reported on a few occasions for discriminatory actions as well as placed on probation for discriminatory/unethical practices amongst African Americans as well as showing favoritism and maintaining inappropriate relationships with other Caucasian employees.

103.    The Director of Health and Human Services, Joseph Lesniewicz and Timothy Kirkhart all worked together to discriminate against the Plaintiff by working together to get (Harry Clark onboard) and to get the Plaintiff (who they knew was an African American Male) terminated from the Plaintiff Supervisory position, so that they can hire Joseph Lesniewicz (a Caucasian, male).

104.    The Polk County Human Resources, allowed the Director of Health and Human Services, to be a Chairperson on a pre-disciplinary board hearing against the Plaintiff, whom she personally terminated, which is a major conflict of interest, tantamount to the knowing and intentional deprivation of Plaintiff's right to be heard at a meaningful time

and in a meaningful manner by a fair and impartial/neutral hearing body, in violation of the Civil Rights Acts of 1964.

105.    Furthermore, the Defendant knowingly and intentionally allowed the rigging of an appeals panel, that to any reasonable jurist, clearly and unambiguously, fell short of being diverse, neutral, or impartial and did not make a concerted effort to acquire witnesses for the terminated Plaintiff, thereby, under color of state law, depriving the Plaintiff of his right to present evidence and witnesses in his favor, in violation of the Civil Rights Acts of 1964.

## LEGAL CLAIMS

### COUNT-ONE
### (RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC 2000E. ET SEQ.)

The foregoing paragraphs are realleged and incorporated by reference herein.

The Respondent's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Respondent's conduct were not the true reasons, but instead were pretext to hide the Respondent's discriminatory animus.

## COUNT-TWO
## (AGE DISCRIMINATION IN VIOLATION
## OF THE AGE DISCRIMINATIONIN EMPLOYMENT ACT (ADEA) 29 USC 621)

The foregoing paragraphs are realleged and incorporated by reference herein.

The Respondent's conduct as alleged above constitutes discrimination based on Race. The stated reasons for the Respondent's conduct were not the true reasons, but instead were pretext to hide the Respondent's discriminatory animus.

## COUNT-THREE
## (REPRISAL FOR ENGAGING IN PROTECTED ACTIVITIES)

The foregoing paragraphs are realleged and incorporated by reference herein.

The Respondent's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII. The stated reasons for the Respondent's conduct were not the true reasons, but instead were pretext to hide the Respondent's retaliatory animus.

## COUNT-FOUR
## (VIOLATION OF THE REHABILITATION ACT OF 1973,
## 29 U.S.C. § 710 ET SEQ.)

The foregoing paragraphs are realleged and incorporated by reference as if fully set forth herein.

The Respondents discriminated against the Plaintiff by denying him reasonable accommodation for his disabilities, including occupational stress, in violation of the Rehabilitation Act of 1973, 29U.S.C. § 701 *et seq.*, as amended.

**COUNT-FIVE**
**(HOSTILE AND ABUSIVE WORKING ENVIRONMENT)**

The foregoing paragraphs are realleged and incorporated by reference as if fully set forth herein.

The Respondent's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehab Act, and the ADEA. The stated reasons for the Respondent's conduct were not the true reasons, but instead were pretext to hide the Respondent's discriminatory animus.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Mr. James L. William, requests that he be awarded:

(a)     A retroactive promotion to James L. William previous Paygrade, with all attendant back pay, benefits, and other emoluments of employment;

(b)     The sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation;

(c)     Front pay at James L. William's previous Paygrade (including pay increases) until he reaches the age of 65 years when he would have retired from the Defendant but for Respondent's management's discriminatory/retaliatory treatment of him;

(d)     A declaration that the acts or omissions of the Defendant(s) complained of herein constituted a violation of James L. William's Civil Rights in violation of Title VII of the Civil Rights Act of 1964;

(e)     Costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon;

and

(f)     Other damages and further relief as deemed just, proper, and equitable by the Court

or Jury.


Respectfully Submitted.


/s/ James L. Williams, Jr.

Mr. James L. Williams, *pro se*
2729 St. Cloud Oaks Dr.
Valrico, FL 33594
(813) 239-6115
Jam8willia@yahoo.com

## **VERIFICATION**

I hereby re-allege the foregoing paragraphs as it fully set forth herein. All exhibits

attached hereto are hereby incorporated by references as if fully set forth herein.  I hereby

certify that the foregoing is true and correct under the pains and penalties of perjury.

Executed at Valrico, Florida on December 1st, 2020.


/s/ James L. Williams, Jr.

Mr. James L. Williams, *pro se*
2729 St. Cloud Oaks Dr.
Valrico, FL 33594
(813) 239-6115
Jam8willia@yahoo.com