UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES LESTER WILLIAMS, JR.,

    Plaintiff,

v.                                      CASE NO. 8:20-cv-2842-WFJ-SPF

POLK COUNTY BOARD OF
COUNTY COMMISSIONERS,

    Defendant.
_____/

## ORDER

Before the Court is Defendant's motion to dismiss the amended complaint (Dkt. 16) and Plaintiff's response (Dkt. 17). After careful review of the allegations of the amended complaint (Dkt. 15), the Court denies the motion as to the first three counts and grants the motion without prejudice on the last count.

### ALLEGATIONS[1]

Plaintiff sues his former employer for race-based discrimination, retaliation, and hostile work environment under Title VII, and age discrimination under the ADEA. Dkt. 15.[2] The following facts are accepted as true based on the present

---

[1] The allegations are set forth in the light most favorable to Plaintiff. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

[2] "Title VII" refers to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Dkt. 15 ¶¶ 128–147 (Count One – discrimination), ¶¶ 159–179 (Count Three – retaliation), ¶¶ 180–200 (Count Four – hostile work environment). "ADEA" refers to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. *Id*. ¶¶ 148–158 (Count Two).

posture of the case. Plaintiff, an African American male, is a U. S. Navy veteran and holds a master's degree. Dkt. 15 ¶ 132. Defendant hired Plaintiff at the age of 40 (in October 2016) as a Veteran Services Officer. *Id*. ¶¶ 9, 23. He held that position for over two years, and in June 2019, Plaintiff was selected for and promoted to the position of Veteran Services Supervisor. *Id*. ¶¶ 23, 27, 132. On December 13, 2019, Plaintiff was terminated at age 44. *Id*. ¶¶ 133, 154.

Two of the individuals Plaintiff supervised were Joseph Lesniewicz and Timothy Kirkhart, both Caucasian men. Dkt. 15 ¶¶ 28, 31. Mr. Lesniewicz had unsuccessfully interviewed for Plaintiff's supervisory position, and he immediately began to refuse consulting Plaintiff on job-related matters. *Id*. ¶¶ 25, 26, 28. Shortly thereafter, Mr. Kirkhart began following Mr. Lesniewicz's lead and soon stopped accepting any direction from Plaintiff. *Id*. ¶ 31. Both veteran services officers bypassed Plaintiff by taking their requests for a varied work schedule and other issues directly to the Director of Health and Human Services—Marcia Andreson, a Caucasian woman. *Id*. ¶¶ 28, 32. Ms. Andreson served as Plaintiff's direct supervisor, but she was not Mr. Lesniewicz or Mr. Kirkhart's direct supervisor.

The amended complaint alleges that Mr. Lesniewicz and Mr. Kirkhart often came to work late, left early, took days off, and scheduled community appointments without approval from Plaintiff. Dkt. 15 ¶¶ 44, 49. Plaintiff

discussed with the two supervisees their failure to follow protocol. *Id*. ¶¶ 29, 32. In Plaintiff's words, the two men simply responded that "the only reason why you are in charge and working here is because we allow you to." *Id*. ¶¶ 33, 50. Plaintiff alleges the "we" referred to all the Caucasian staff members working there. *Id*.

Plaintiff spoke with Ms. Andreson about the failure of Mr. Lesniewicz and Mr. Kirkhart to follow the chain of command. Dkt. 15 ¶¶ 29, 30, 34, 49. Ms. Andreson told Plaintiff on more than one occasion to leave them alone and let them supervise themselves. *Id*. ¶¶ 30, 34.

Plaintiff received all satisfactory remarks at his three-month evaluation by Ms. Andreson. Dkt. 15 ¶ 42. Around that same time in August 2019, Ms. Andreson informed Plaintiff that Mr. Lesniewicz and Mr. Kirkhart were "burned-out," and Plaintiff agreed to help with the client load and hold training sessions. *Id*. ¶¶ 44, 46. Their poor performance and reduced hours continued, and Plaintiff began asking Ms. Andreson if he could write up the two subordinates for violations. *Id*. ¶ 49, 52. Ms. Andreson always instructed Plaintiff not to do so. *Id*. Ms. Andreson's assistant began asking Plaintiff to manipulate the timecards for Mr. Lesniewicz and Mr. Kirkhart to reflect that they were working full hours. *Id*. ¶ 53.

At that point, Mr. Lesniewicz and Mr. Kirkhart complained to Ms. Andreson about Plaintiff's persistent annoyance with their work performance and hours. Dkt. 15 ¶ 51. The two men began approaching other workers to convince them to complain to Ms. Andreson about Plaintiff and have him replaced by Mr. Lesniewicz. *Id.* ¶ 54. Plaintiff discovered this information from another supervisee—Harry Clark, an African American man. *Id.* ¶ 55. Mr. Clark admitted to Plaintiff that he complied with his fellow employees' request. *Id.* ¶ 56. Because Mr. Clark was aware of the close relationship among Ms. Andreson, Mr. Lesniewicz, and Mr. Kirkhart, he feared for his job should he not oppose Plaintiff. *Id.* ¶¶ 56, 59.

By October 2019, Plaintiff told Ms. Andreson that he could not be an effective supervisor if Mr. Lesniewicz and Mr. Kirkhart were allowed to come and go as they pleased. Dkt. 15 ¶ 62. Plaintiff asked Ms. Andreson, "What was so special about these two guys that they get such special privileges?" *Id.* ¶ 64. Plaintiff went so far as to put in writing to Ms. Andreson his intention to start writing up the two men for violations. *Id.* ¶¶ 65, 66. Within a week, Plaintiff received his first negative follow-up work performance memorandum from Ms. Andreson, which included allegations and "perceptual complaints" from both Mr. Lesniewicz and Mr. Kirkhart. *Id.* ¶ 67. On December 13, 2019, Defendant terminated Plaintiff for cause. *Id.* ¶¶ 11–12, 95, 133–34. The reason stated was

"Plaintiff's performance improvement regarding team interaction and development was not demonstrated during the probationary period." *Id*. ¶¶ 12, 134.

## DISCUSSION

The Court accepts all factual allegations, not legal conclusions, as true and construes all reasonable inferences from those alleged facts in the light most favorable to Plaintiff.³ *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (allowing reasonable inferences to be drawn from factual content). The amended complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). More than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is required. *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court construes a *pro se* litigant's pleadings liberally. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (holding less stringent standards apply to *pro se* pleadings but cautioning courts not to rewrite an otherwise deficient pleading to permit action to stand).

<u>Count One – Title VII race discrimination</u>

All four separate counts as amended now contain multiple paragraphs with factual content—an appropriate replacement for the previous single, conclusory

---

³ *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating legal conclusions "couched" as facts need not be accepted as true); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (same).

5

paragraph comprising each count.[4]  Count One makes it clear that Plaintiff compares himself to Greg Alpers, the manager of Housing and Neighborhood Development ("NHD").  Dkt. 15 ¶¶ 16, 20, 22, 135, 138, 139.[5]  Both Plaintiff and Mr. Alpers held supervisory roles and reported to Ms. Andreson or whoever may have held the position of Director of Health and Human Services at the relevant times.[6]  Mr. Alpers is Caucasian, and presumable still employed.  Dkt. 15 ¶ 16.

Plaintiff describes himself and Mr. Alpers as similarly situated because both held a management or supervisory position, and both reported to Ms. Andreson.  He alleges he was terminated for a managerial style similar to Mr. Alpers'.  Dkt. 15 ¶¶ 135–136, 139.  Specifically, both he and Mr. Alpers were perceived as "harsh, harassing, controlling, belittling and authoritative" and both were "looking out for the best interest of [County] policies, internal program policies." *Id*. ¶¶ 14, 20, 139.

---

[4] Although the amended complaint continues to incorporate all of the preceding paragraphs into each of the four counts, the first count is not adversely affected.  By incorporating by reference the preceding paragraphs, Count One, unlike the other three counts, does not contain irrelevant factual allegations and legal conclusions.  *See Ross v. Sejin Am., Inc.*, No. 18-cv-537-ALB-JTA, 2020 WL 1015764, at *3 n.2 (M.D. Ala. Mar. 2, 2020) (noting first count typically does not run afoul of shotgun pleading rule when it incorporates preceding paragraphs).

[5] Mr. Lesniewicz and Mr. Kirkhart are not mentioned in the first count, apart from the wholesale incorporation of all preceding paragraphs.

[6] The amended complaint is unclear as to the precise date Ms. Andreson became the Director of Health and Human Services.  Plaintiff, in connection with a 2014 incident, refers to "the then Director . . . Ms. Kandis Baker-Buford (the same Director Plaintiff worked for)." Dkt. 15 ¶ 19.  Ms. Baker-Buford is not mentioned again, and the remainder of the amended complaint names only Ms. Andreson as director.

Plaintiff alleges the preferential treatment lies in "the perception" of Mr. Alpers who is "white" and "was viewed favorably" by the Director of Health and Human Services, and the Human Resources Department. *Id*. ¶¶ 21, 140. Mr. Alpers introduced Ms. Andreson, the Director of Health and Human Services, to the man who became Ms. Andreson's husband. *Id*. ¶¶ 21, 141. Both Mr. Alpers and Ms. Andreson are Caucasian. Plaintiff alleges he was not given the same benefit of the doubt as Mr. Alpers because Mr. Alpers is Caucasian, which was the "actual motivating factor" for terminating Plaintiff. *Id*. ¶¶ 22, 142, 146.

Title VII provides two theories of liability for racial discrimination: disparate treatment and disparate impact. *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015); *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Disparate treatment requires a plaintiff to establish the defendant had a discriminatory intent. *Id*. Disparate impact challenges a practice that disproportionately adversely affects a protected group. *Id*.

The amended complaint attempts to allege a disparate treatment, not disparate impact, claim based on race: "The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus." Dkt. 15 ¶¶ 129, 147. Liability in a disparate treatment claim "depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015)

(quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)); *Ricci*, 557 U.S. at 577. Disparate treatment may be proven by establishing a pattern or practice of discrimination. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286–87 (11th Cir. 2000).[7] As noted in this Court's prior order, to establish a *prima facie* case of disparate treatment under Title VII, Plaintiff must show he was qualified for the position and a member of a protected class (race); he was subjected to adverse employment action (termination); and his employer treated similarly situated employees outside the protected class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

A *prima facie* case, however, refers to evidentiary proof, not the notice and plausibility standards applied to allegations of a complaint. *See Andrews v. City of Hartford*, 700 F. App'x 924, 925 (11th Cir. 2017) (per curiam) (reiterating that in Title VII and ADEA cases, a complaint asserting employment discrimination need not contain specific facts establishing a *prima facie* case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is an evidentiary standard).[8] In keeping with this distinction, the Court finds

---

[7] As aptly noted by another district court, the pattern or practice terminology applies to disparate treatment, not disparate impact cases. *Smith v. Consol. City of Jacksonville*, No. 11-cv-345-J-32MCR, 2013 WL 1296247, at *2 n.5 (M.D. Fla. Mar. 30, 2013).

[8] *See also Evans v. Ga. Dep't of Behav. Health & Developmental Disabilities*, No. CV 415-103, 2018 WL 4610630, at *5 (S.D. Ga. Sept. 25, 2018) (noting that plaintiff is not required to allege facts to make out a classic *McDonnell Douglas prima facie* case but only enough facts, when taken as true, to suggest discrimination) (citations omitted).

that Plaintiff's amended complaint sets forth a somewhat sparse but plausible claim for disparate treatment, provided the facts as developed can support that Mr. Alpers is truly a comparator, that Plaintiff and Mr. Alpers were similarly situated, and that race was the "actual motivating factor" for terminating Plaintiff.[9] Of note, Plaintiff fails to allege race was ever discussed with Ms. Andresen or anyone in the human resources department. The only discussions alleged to have involved race occurred between Plaintiff and co-worker Harry Clark (African American) and among Mr. Clark, Mr. Lesniewicz, and Mr. Kirkhart. Dkt. 15 ¶¶ 55–57.[10] At this stage of the proceedings, the Court will permit the case to proceed to summary judgment after a factual record is developed.

*Count Two – Age Discrimination*

The Court agrees that Plaintiff incorrectly incorporates the entirety of Count One and the preceding 116-paragraph "fact" section into Count Two, thus rendering it technically a shotgun pleading. The Court finds, however, that it is no

---

[9] It is uncertain whether Mr. Alpers actually held a comparable position to Plaintiff's, although both reported to the same supervisor, Ms. Andreson. Moreover, the incident with Mr. Alpers occurred in 2014, some two years before Plaintiff was hired. Dkt. 15 ¶¶ 16, 17, 19, 135, 136. At that time, two African American women complained to the Director of Health and Human Services about Mr. Alpers. *Id*.

[10] Plaintiff claims Mr. Clark told him that Mr. Lesniewicz and Mr. Kirkhart "approached him [Mr. Clark] about getting rid of the Plaintiff so that Mr. Joseph Lesniewicz can be the Supervisor, but now needed a black person to complain also to conceal it from looking discriminatory." Dkt. 15 ¶ 55. Mr. Clark allegedly told Plaintiff his reason for sharing this information with Plaintiff was that "it was not right that they are using him (an African American male), to take down another African American." *Id*. ¶ 57. As noted in this Court's prior order, Mr. Lesniewicz and Mr. Kirkhart did not make the decision to terminate Plaintiff.

9

longer "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Given the significant improvement to the form of the complaint, dismissal with leave to amend would serve only to delay the progression of this case.

To state a *prima facie* case of age discrimination under the ADEA, Plaintiff must allege: "(1) he was a member of the protected group between the age of 40 and 70; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (per curiam) (citation omitted). Plaintiff must also show that his age was the "but-for" cause of his termination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013).

Plaintiff alleges he was 40 in October 2016 when hired, 43 when promoted, and 44 when terminated. Dkt. 15 ¶¶ 9, 11, 23, 133, 149, 150, 154, 156. Plaintiff's supervisory position was filled six months after discharge by Mr. Lesniewicz, who was below 40 ("in his 30s"). *Id*. ¶¶ 149, 150, 156. He also asserts that the

qualifications for his position changed so that Mr. Lesniewicz would qualify. *Id*. ¶ 151.[11]

Although Plaintiff was already a member of the protected age group when he was hired, this count may proceed. Defendant may again argue that Plaintiff's age was not the "but-for" cause of his termination.

*Count Three – Retaliation ("Reprisal for Engaging in Protected Activities")*

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to Plaintiff's protected activity. *Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006); *Wideman v. Wal-Mart Stores, Inc*., 141 F.3d 1453, 1454 (11th Cir. 1998). Plaintiff alleges the statutorily protected activity was his contacting the Human Resources Employees Relation Manager (Mr. Velazquez) to request a meeting about Ms. Andreson giving him a second memorandum titled "One-Month Probation Extension." Dkt. 15 ¶¶ 161, 163. He alleges he "engaged in protected activities when the Plaintiff submitted a written request to Human Resources requesting an investigation of the Plaintiff's immediate supervisor, as to why the Plaintiff was disciplined because he held the Caucasian and African

---

[11] Plaintiff notes that another one of his supervisees, Mr. Clark, interviewed for his vacant position along with Mr. Lesniewicz. *Id*. ¶ 153. In age discrimination claims, race is irrelevant.

American employees under his charge to the same attendance and work performance standard." *Id.* ¶ 174.  Plaintiff continues that because he opposed Ms. Andreson's "racism toward African Americans, whereby she would refuse to enforce the same rules and regulations upon Caucasian employees . . . and committed the same to writing, which the Plaintiff delivered to the Human Resources Department, the Plaintiff opposed a practice protected by Title VII and thereby engaged in protected activities." *Id.* ¶ 175.

The Court finds these allegations sufficient, though vague, that he opposed Ms. Andreson's alleged differential treatment of employees based on race.  While Plaintiff may proceed past the dismissal stage, he must ultimately show that any protected activity was more than a "motivating factor" for his termination.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  He must affirmatively establish that he would not have been terminated but for his protected activity.  *See id.* at 362 (noting causation in retaliation claims is established by showing the protected activity was the "but-for" cause of the adverse action).  Count Three therefore stands.

*Count Four – Hostile Work Environment*

Plaintiff alleges that he was subjected to "sufficiently severe or pervasive" harassment that created an abusive working environment.  Dkt. 15 ¶¶ 195, 197.  He supports this allegation by stating Ms. Andreson called him "into her office at least

three times in three months, when she would scold the Plaintiff for holding Caucasian employees under his charge to the same rules and regulations that applied to all employees regardless of their race, and would threaten to create a disciplinary 'paper trail' and ultimately terminate the Plaintiff if he did not, for lack of better term, give the Caucasian employees impunity." Dkt. 15 ¶ 195. At best, Plaintiff alleges that his authority was undermined by Ms. Andreson and he was treated unprofessionally and unfairly reprimanded for trying to implement proper company protocol with respect to employees reporting to work. Although Plaintiff subjectively believed her actions were based on his skin color, the amended complaint is devoid of any allegations of racial slurs or name-calling, let alone any that occurred with such frequency and severity as to interfere with Plaintiff's job performance.

Plaintiff must plead facts to establish "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020) (citation omitted); *Henderson v. City of Birmingham*, 826 F. App'x 736, 743 (11th Cir. 2020) (citing *Fernandez* and affirming dismissal of complaint with

prejudice).[12] None of the allegations paint a picture of an actionable hostile work environment based on race. The allegation that Mr. Lesniewicz and Mr. Kirkhart told Plaintiff "the only reason why you are in charge and working here is because we allow you to" does not involve race or rise to the level of a plausible racially hostile work environment under Title VII. *See* Dkt. 15 ¶¶ 33, 50. That Mr. Clark told Plaintiff he was asked to complain about Plaintiff to Ms. Andreson because Mr. Lesniewicz and Mr. Kirkhart wanted support from an African American, does not amount to a workplace permeated with "discriminatory intimidation, ridicule, and insult." *See Wilkerson v. H & S, Inc.*, 438 F. App'x 769, 770 (11th Cir. 2011) (citation omitted).[13] There is no indication that anyone at the workplace ever uttered a racial slur. Plaintiff was given the opportunity to amend his complaint to add factual allegations to support a claim for hostile work environment and has failed to do so. The Court does not suggest Plaintiff attempt to replead this thin

---

[12] A prima facie claim for hostile work environment requires a plaintiff to allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a hostile work environment; and (5) the employer is responsible for the environment either vicariously or directly. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (enumerating factors to be evaluated objectively in determining whether conduct constitutes harassment).

[13] *Cf. Charles v. Underhill Staffing Health Serv.*, No. 20-cv-341-J-34PDB, 2021 WL 825881, at *21 (M.D. Fla. Jan. 28, 2021) (dismissing hostile work environment claim in which plaintiff alleged her St. Lucian accent was made fun of and references were made to "these people" who were unable to speak understandable English), *report and recommendation adopted*, 2021 WL 859955 (M.D. Fla. Mar. 8, 2021).

count, but he may make one more attempt if he wishes. Count Four is dismissed without prejudice.

Accordingly, the motion to dismiss (Dkt. 16) is granted in part and denied in part. Plaintiff's claim for hostile work environment under Title VII in Count Four is dismissed without prejudice. The case will proceed on Counts One, Two, and Three. If no amended Count Four is refiled within fourteen (14) days, Defendant shall file its answer and defenses within fourteen (14) days thereafter.

**DONE AND ORDERED** at Tampa, Florida on June 21, 2021.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of record and unrepresented parties